**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JUDITH MELANIE LUCERO,

        Plaintiff,

v.                                   No. CV 14-712 WJ/CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

        Defendant.

**<u>PROPOSED FINDINGS AND RECOMMENDED DISPOSITION</u>**

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* ("Motion"), (Doc. 16), filed on March 19, 2015; Defendant's *Brief in Response to Plaintiff's Motion to Reverse or Remand* ("Response"), (Doc. 20), filed on June 17, 2015; and *Plaintiff's Reply to Defendant's Response Brief* ("Reply"), (Doc. 24), filed on August 11, 2015. United States District Judge William P. Johnson referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition of the case. (Doc. 7).

On February 18, 2010, Judith Melanie Lucero filed an application for disability insurance benefits, alleging disability beginning February 1, 2009. (Administrative Record ("AR") 161–67). Her application was denied on April 20, 2010, (AR 72–75), and also upon reconsideration on September 29, 2010. (AR 77–80). Ms. Lucero filed her request for a hearing before an Administrative Law Judge ("ALJ") on November 14, 2010, (AR 81); and a hearing was set for April 26, 2012, before ALJ Ann Farris. (AR 89–

93). However, before the hearing, Ms. Lucero's case was dismissed in error based on representations from her non-attorney representative, Roy Archuleta. (*See* AR 25-28, 61). Ms. Lucero appeared at the hearing on April 26, 2012, and requested that her case be reinstated and the she be provided time to obtain counsel. (AR 61–65). ALJ Farris granted her request, and a second hearing was held on February 19, 2013. (AR 29-58). Ms. Lucero and Thomas A. Greiner, an impartial vocational expert ("VE"), testified at the hearing. (*Id.*). Ms. Lucero was represented at the hearing by Gary Martone. (*Id.*). ALJ Farris issued her opinion on April 23, 2013, finding that Ms. Lucero was not disabled under 20 C.F.R. § 404.1520(f) at any time during the alleged disability onset date through the date last insured. (AR 19). Ms. Lucero filed an application for review by the Appeals Council, (AR 6–7), which was denied, (AR 1–5), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Ms. Lucero argues that the ALJ committed reversible, legal error by: (1) omitting Ms. Lucero's psychological limitations from the residual functional capacity finding ("RFC") by improperly rejecting medical opinions in the record; (2) failing to make findings regarding the physical or mental demands of Ms. Lucero's past relevant work; and (3) inappropriately relying on VE testimony which was based on the ALJ's improper RFC finding . (Doc. 16 at 1–2).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. In addition, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to properly weigh the medical opinions in

the record, the Court **RECOMMENDS** that the Motion be **GRANTED** and the case be

**REMANDED** for further proceedings.

   **I.      Standard of Review**

   The standard of review in a Social Security appeal is whether the

Commissioner's final decision is supported by substantial evidence and whether the

correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98

(10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct

legal standards were applied, the Commissioner's decision stands and the plaintiff is not

entitled to relief.  *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v.

Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760

(10th Cir. 2003). A court should meticulously review the entire record but should neither

re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*,

373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the

Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's

decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v.

Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

   "Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365

F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial

evidence if it is overwhelmed by other evidence in the record or if there is a mere

scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

While a court may not re-weigh the evidence or try the issues *de novo*, its examination

of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.    Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant

---

[1] 20 C.F.R. pt. 404, subpt. P, app. 1.

work, she will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering his RFC, age, education, and work experience. *Grogan*, 399 F.3d at 1257.

### III.     Background

Ms. Lucero initially applied for disability benefits alleging endometriosis, chronic pain, and depression. (AR 72). Ms. Lucero has undergone several surgeries to address various physical problems stemming from her endometriosis. (AR 38, 51, 382, 504). She states that through her alleged onset date she continued to suffer from chronic pelvic and abdominal pain. (AR 36–38). In addition, Ms. Lucero has a history of psychological impairments, which she claims have been exacerbated by her physical limitations. (AR 36, 371).

As an initial matter, the ALJ found that Ms. Lucero last met the insured status requirements of the Social Security Act on June 30, 2010. (AR 13). Thus, the ALJ determined that Ms. Lucero must establish disability on or before that date to be entitled to disability insurance benefits. (*Id.*). The ALJ then began the five-step sequential evaluation process.

At step one, the ALJ determined that Ms. Lucero had not engaged in substantial gainful activity since her alleged onset date of disability of February 1, 2009, through her date last insured, June 30, 2010. (AR 13). At step two, the ALJ concluded that Ms. Lucero was severely impaired by scarring from multiple abdominal surgeries and associated pain, bipolar disorder, and scaroliitis. (*Id*).

At step three, the ALJ explained that she specifically considered whether Ms. Lucero's impairments satisfied or met any of the listed impairments. She determined that none of Ms. Lucero's impairments, solely or in combination, equaled one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, and 404.1526. (AR 13–14).

The ALJ proceeded to step four. First, she analyzed Ms. Lucero's subjective complaints of pain and psychological symptoms and the objective medical evidence in the record. (AR 15–18). The ALJ found that Ms. Lucero's statements as to the intensity, persistence, and limiting effects of her symptoms during the pertinent period were not entirely credible. (AR 17). She based this adverse credibility finding on Ms. Lucero's self-reported daily activities and the objective evidence in the record. (*Id.*). The ALJ discussed medical records from Presbyterian Medical Center and New Mexico Arthritis Center, and treatment notes by William A. Harrison, M.D. documenting Ms. Lucero's complaints of abdominal pain. (AR 15–16). The ALJ also considered the reports and opinions of Cathy L. Simutis, Ph.D., Renate Wewerka, Ph.D., and Neil Arnet, M.D., discussing Ms. Lucero's mental impairments and limitations. (AR 16–18). Throughout her decision, the ALJ emphasized that some records and opinions are from periods outside the date last insured. (AR 16, 17, 18).

The ALJ ultimately found that, from the alleged onset date through the date last insured, Ms. Lucero could perform light work as defined in 20 C.F.R. § 404.1567(a). (AR 14). The ALJ determined that, due to pain and depression, she was unable to work at jobs requiring a production pace, such as assembly jobs. (*Id.*).

The ALJ then explained that, based on the testimony from the VE, Ms. Lucero was able to perform her past relevant work as a loan clerk, retail clerk, and secretary.

(AR 18–19). Accordingly, she found that Ms. Lucero was not disabled under the Social Security Act from February 1, 2009, the alleged onset date, through June 30, 2010, the date last insured. (AR 19).

## IV.    Analysis

Ms. Lucero argues that the ALJ committed reversible, legal error at steps four and five of the sequential evaluation process by: (1) improperly analyzing medical opinions regarding Ms. Lucero's psychological limitations, and omitting those limitations from the RFC finding; (2) failing to make findings regarding the physical or mental demands of Ms. Lucero's past relevant work; and (3) inappropriately relying on VE testimony which was based on the ALJ's improper RFC finding. (Doc. 16 at 1–2).

The Commissioner responds that the ALJ properly weighed all medical opinions in the record. (Doc. 20 at 5–10). The Commissioner further argues that the ALJ properly relied on the VE testimony and the Dictionary of Occupational Titles ("DOT") in making her findings about the demands of Ms. Lucero past relevant work. (Doc. 20 at 10–11). Finally, the Commissioner maintains that because the ALJ properly evaluated the medical opinions in the record, the RFC finding and subsequent hypothetical question to the VE were supported by substantial evidence. (Doc. 20 at 12).

### A.    *Requirement to Weigh All Medical Opinions in the Record*

Social Security Regulations require the ALJ to evaluate every medical opinion in the record, including the opinions of non-examining State agency physicians. *See* 20 C.F.R. § 416.927(b); Social Security Ruling ("SSR") 96-6p, 1996 WL 374180. Every medical source opinion should be weighed by the ALJ in consideration of the following, applicable "deference factors":

(1) the length of the treatment relationship and the frequency of
examination; (2) the nature and extent of the treatment relationship,
including the treatment provided and the kind of examination or testing
performed; (3) the degree to which the physician's opinion is supported by
relevant evidence; (4) consistency between the opinion and the record as
a whole; (5) whether or not the physician is a specialist in the area upon
which an opinion is rendered; and (6) other factors brought to the ALJ's
attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003); *see also* 20 C.F.R. §

416.927 (c)-(d). Ultimately, the ALJ must give good reasons—reasons that are

"sufficiently specific to [be] clear to any subsequent reviewers"—for the weight that she

ultimately assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations omitted). Failure

to do so constitutes legal error. *See Kerwin*, 224 Fed. Appx. at 884.

### B. *The ALJ's Analysis of Medical Opinions in the Record*

With regard to opinion evidence in the record, the ALJ stated that she

"considered opinion evidence in accordance with the requirements of 20 CFR §

404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p." (AR 14). In her decision, the ALJ

discusses the specific findings of Cathy Simutis, Ph.D., Renata Wewerka, Ph.D., and

Neil Arnet, M.D., but does not adequately explain the weight she afforded their

assessments.

#### 1. *The Findings of Dr. Simutis*

Dr. Simutis performed a psychological consultative examination of Ms.

Lucero on August 17, 2010. (AR 330–31). In the report, Dr. Simutis diagnosed Ms.

Lucero with major depressive disorder and chronic pain due to a medical condition. (AR

331). She opined that Ms. Lucero's prognosis is poor, and that Ms. Lucero is mildly

limited in her ability to understand and remember instructions; moderately limited in her

ability to concentrate and persist in a task; moderately limited in her ability to interact

with coworkers and the public; and mildly limited in her ability to adapt to change. (*Id.*).

Dr. Simutis gave Ms. Lucero a Global Assessment of Functioning ("GAF") score of 35.[2]

(*Id.*).

The ALJ stated that she placed great weight on the narrative portions of Dr. Simutis' report that are consistent with the RFC finding. (AR 18). The ALJ did not indicate the weight she afforded Ms. Lucero's GAF score, but did explain that she found that it was inconsistent with the narrative portions of the report, and that the narrative portions of the report seemed more accurate. (AR 16). She explained that "a GAF score is a subjective snapshot assessment," and that she believed the GAF score was based upon Ms. Lucero's subjective complaints, which she determined were "not fully credible or supported by the totality of the medical evidence." (*Id.*).

It is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (internal citations omitted). Here, the ALJ placed great weight on the narrative portions of Dr. Simutis' report, and seems to have rejected Ms. Lucero's GAF score. The Court is satisfied with the ALJ's explanation as to the rejection of Ms. Lucero's GAF score.

The ALJ does not, however, explain the weight she afforded Dr. Simutis' opinions in the narrative report that are not consistent with her RFC finding. Indeed, Dr. Simutis

---

[2] "The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." *Lanley*, 373 F.3d at 1122 n.3 (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 32). "A GAF of 31-40 is extremely low, and indicates some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." *Salazar v. Barnhart*, 468 F.3d 615, 624 n.4 (10th Cir. 2006).

found that Ms. Lucero was moderately limited in her abilities to concentrate and persist

in a task and interact with coworkers and the public.

While the Commissioner appears to suggest otherwise, (*see* Doc. 20 at 7

(explaining that only an extreme limitation is considered incompatible with the ability to

work)), the Social Security Administration's Program Operations Manual Systems

("POMS") acknowledges that a moderate impairment supports the conclusion that an

individual's capacity to perform work is impaired. POMS DI 24510.063(2), *available at*

https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510063. In addition, the Tenth Circuit

has recognized that moderate impairments may decrease a claimant's ability to perform

work. *Bowers v. Astrue*, No. 07-5114, 271 Fed. Appx. 731, 733–34 (10th Cir. Mar. 26,

2008) (unpublished).  Although the ALJ placed "great weight" on Dr. Simutis' narrative

portions of her report, which included that Ms. Lucero was moderately limited in her

abilities to concentrate and persist in a task and interact with coworkers and the public,

these limitations are not reflected in the ALJ's RFC finding. The ALJ seems to have

implicitly rejected those findings, and therefore inappropriately "'us[ed] portions of

evidence favorable to [her] position while ignoring other evidence.'" *Carpenter v. Astrue*,

537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart,* 362 F.3d 676, 681

(10th Cir. 2004)). This selective application of Dr. Simutis' report without explanation is

error, and requires a remand in order for the ALJ to explain the evidentiary basis for her

RFC determination. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

### 2. *The Findings of Dr. Wewerka*

Dr. Wewerka, a State non-examining psychological consultant, performed a

Psychiatric Review Technique and Mental Residual Functional Capacity Assessment ("MRFCA") of Ms. Lucero's impairments. Similar to Dr. Simutis, Dr. Wewerka diagnosed Ms. Lucero with major depressive disorder and chronic pain due to a medical condition. (AR 349, 352).

In Section I of her MRFCA, Dr. Wewerka found that Ms. Lucero was moderately limited in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or proximity to others without being distracted by them; and (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 342–43). In Section III of her MRFCA, Dr. Wewerka concluded that Ms. Lucero "can understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a work setting." (AR 344). The ALJ stated that she would give Dr. Wewerka's opinion significant weight, because Dr. Wewerka concluded that "there are moderate limitations in concentration, persistence and pace in keeping with [her] evaluation." (AR 18).

Ms. Lucero argues that the ALJ improperly ignored Ms. Lucero's psychological limitations as documented by Dr. Wewerka in Section I of the MRFCA. (Doc. 16 at 18–19). Ms. Lucero contends that, although the ALJ afforded Dr. Wewerka's assessment significant weight, the ALJ failed to include any of Ms. Lucero's five moderate limitations documented in Section I of the MRFCA in the RFC finding. (*Id*.). The Commissioner

maintains that Dr. Wewerka translated the limitations outlined in Section I into specific opinions as to Ms. Lucero's RFC in Section III. (Doc. 20 at 7–9). Accordingly, the Commissioner argues, the ALJ was not required to separately address the limitations in Section I of the MRFCA. (*Id.*).

The Tenth Circuit recently addressed this very issue in an unpublished decision. *See Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015) (unpublished). In that case, the claimant argued that the ALJ failed to incorporate all of the limitations assessed pursuant to a non-examining, State Agency's MRFCA, because the Section I limitations were left out of the RFC but the Section III limitations were included verbatim. The Tenth Circuit explained that the MRFCA's Section I "is for recording summary conclusions derived from the evidence in the file and directs that detailed explanation of the degree of limitation for each category is to be recorded in Section III." *Id.* at 618 (quotations and alterations omitted). That language is consistent with the provisions of the Social Security Administration's POMS, which "provides that Section III of the MRFCA, not Section I, is for recording a medical consultant's formal mental RFC assessment, and that adjudicators are to use the Section III narrative as the RFC assessment." *Id.* at 618–19 (discussing POMS DI 25020.010 B.1., POMS DI 24510.060 B.4.a., and POMS DI 24510.065 A.). However, the degree and extent of the capacity or limitation ascribed in Section I must be described in narrative format in Section III. *Id.* at 619 (citing POMS DI 24510.063 B.2.).

Further, the Court explained that "[t]he POMS also provides that the discussion of all mental capacities and limitations in Section III must be in narrative format, and that Section III is for explaining the conclusions indicated in [S]ection I, in terms of the extent

to which these mental capacities or functions could or could not be performed in work settings." *Carver*, 600 Fed. Appx. at 619 (quotations omitted). The Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." *Id.* (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224–25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11–cv–00333–WYD, 2012 WL 1044746, at *5–6 (D. Colo. Mar. 28, 2012) (unpublished)).

In applying these principles, the Tenth Circuit found that the consultant's Section III narrative "adequately encapsulated" his Section I finding that the claimant had a moderate limitation in being able to accept instructions and respond appropriately to supervisor criticism. *Carver*, 600 Fed. Appx. at 619. In Section III, the consultant opined that the claimant could "relate to supervisors and peers on a superficial work basis" and in a work scenario involving only "simple tasks with routine supervision." *Id.* The Court determined that these statements adequately explained the effects of a moderate limitation in the claimant's ability to accept instructions and respond appropriately to supervisor criticism, because "the ALJ sufficiently captured the essence of the Section III functional limitations by stating that Carver could understand, remember, and carry out simple instructions in a work-related setting and could interact with co-workers and supervisors, under routine supervision." *Id.* at 619–20. The Tenth Circuit reasoned that interacting with supervisors in the course of routine supervision over simple work was

"tantamount" to the "superficial" interaction encountered in such jobs, and refused to "parse the ALJ's language too finely." *Id.* at 620.

Here, the Court is not convinced that Dr. Wewerka's Section III findings adequately explain the moderate limitations she stated in Section I. For instance, even though Dr. Wewerka noted that Ms. Lucero was moderately limited in her ability to understand, remember, and carry out detailed instructions in Section I, (AR 342), in Section III she opined that Ms. Lucero can, in fact, understand, remember, and carry out detailed, but not complex, instructions.  (AR 344). The Court cannot say that this statement adequately explains such a limitation; as Ms. Lucero points out, (Doc. 24 at 4), it seems to be completely inconsistent. *See Bowers*, 271 Fed. Appx. at 733–34 (recognizing that moderate impairments may decrease a claimant's ability to perform work). As a result, the ALJ's reliance on Dr. Wewerka's opinion in Section III is not supported by substantial evidence. *See Carver*, 600 Fed. Appx. at 619; *Baysinger*, 2012 WL 1044746, at *7; *Muller v. Colvin*, No. 12-cv-538 LAM, at *17 (D.N.M. filed June 11, 2013) (unpublished).

Furthermore, even assuming that Dr. Wewerka's Section III assessments could properly be considered substantial evidence supporting the ALJ's RFC finding, the ALJ's analysis of the opinion is still inadequate. Despite giving Dr. Wewerka's opinion in Section III significant weight, the limitations stated in that opinion are not reflected in the ALJ's RFC finding. Indeed, while Dr. Wewerka opined that Ms. Lucero can only understand, remember, and carry out detailed, but not complex, instructions, and make decisions, attend, and concentrate for only two hours at a time, (AR 344), the only non-exertional limitation in the RFC limits Ms. Lucero to working jobs that do not require a

production pace, such as assembly work. (AR 14). The ALJ did not discuss or explain

why she did not include these limitations in his RFC determination. This, again, is error.

*Baysinger*, 2012 WL 1044746, at *6. As stated above, "[t]he ALJ may not pick and

choose which aspects of an uncontradicted medical opinion to believe, relying on only

those parts favorable to a finding of nondisability." *Hamlin*, 365 F.3d at 1219 (internal

citations omitted).

Thus, the Court is unable to meaningfully review the ALJ's findings, which

requires remand. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding

that in the absence of findings supported by specific weighing of the evidence in the

record, the ALJ leaves the Court unable to assess whether relevant evidence

adequately supports her conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir.

2003) ("Without the benefit of the ALJ's findings supported by the weighing of this

relevant evidence, we cannot determine whether his conclusion . . . is itself supported

by substantial evidence.").

### 3.  The Findings of Dr. Arnet

Dr. Arnet is Ms. Lucero's treating psychiatrist.[3] Ms. Lucero first presented to Dr.

Arnet on September 16, 2010 for treatment of depression and anxiety. (AR 371). Dr.

Arnet provided a Psychiatric Report on Judith Lucero dated April 2, 2012, in which he

describes Ms. Lucero's treatment from September 16, 2010 through April 2, 2012. (AR

371–74). In the report, Dr. Arnet describes Ms. Lucero's history of and treatment for

physical and mental impairments, her initial mental status examination, and treatment

course. (*Id.*). After treatment, Dr. Arnet diagnosed Ms. Lucero with Bipolar II Disorder

---

[3] The parties do not dispute that Dr. Arnet is Ms. Lucero's treating psychiatrist. (*See* Doc. 20 at 5–6).

and Panic Disorder without Agoraphobia, and gave her a current GAF score of 45, and 50 for the past year.[4] (AR 374). Dr. Arnet opined that Ms. Lucero was permanently disabled due to her mental and physical impairments. (*Id.*). The ALJ afforded Dr. Arnet's assessment "little weight," as the "opinion falls outside of the pertinent period of the date last insured . . . ." (AR 17).

Generally, the ALJ will give more weight to the medical opinions of a claimant's treating physicians. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In deciding how much weight to give a treating source opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

First, the ALJ must initially determine whether a treating physician's opinion is to be accorded "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

Second, if the opinion is not accorded controlling weight, "the ALJ must make clear how much weight the opinion is being given. . .and give good reasons. . .for the weight assigned." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300-01). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how

---

[4] A GAF score between "41–50[,] indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley,* 373 F.3d at 1122 n.3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 34)).

much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330-31 (citing *Langley*, 373 F.3d at 1120). Indeed, "even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [the Regulations]." *Langley*, 373 F.3d at 1119 (internal citations and quotations omitted); *see* discussion of deference factors *supra* p. 8.

Here, the ALJ did not engage in the required two-step inquiry in analyzing Dr. Arnet's treating opinion. Instead, the ALJ stated that she afforded Dr. Arnet's assessment "little weight," as the "opinion falls outside of the pertinent period of the date last insured . . . ." (AR 17). The Court first notes that, although Dr. Arnet's first report is dated April 2, 2012, Ms. Lucero initially presented to Dr. Arnet on September 16, 2010, two and a half months after the date last insured. (AR 371). Dr. Arnet refers to this initial meeting, and her treatment during the few months immediately following, in describing her impairments and limitations. (AR 372–74).

Additionally, Dr. Arnet cites to Ms. Lucero's past, longstanding medical and psychological problems in making his assessment and diagnoses. (AR 371–73). Dr. Arnet's narrative of Ms. Lucero's psychological history is corroborated by the record, and it is undisputed that she suffered from psychological issues prior to the date she was last insured. (AR 284, 318, 319, 322, 323, 509, 519). Indeed, the ALJ found that, from Ms. Lucero's alleged onset date through the date last insured, Ms. Lucero's bipolar disorder, as diagnosed by Dr. Arnet in 2012, was a severe medically determinable

impairment.[5] (AR 13). It is entirely proper for the ALJ to consider medical opinions rendered outside the pertinent period of disability when those opinions address conditions and symptoms that manifested before the claimant was no longer insured. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263–64 (10th Cir. 2005); *Culler v. Massanari*, No. 00-3163, 9 Fed. Appx. 839, 843–44 (10th Cir. May 22, 2001) (unpublished). The Court finds that, given the proximity to the date last insured, Dr. Arnet's reliance on Ms. Lucero's previous psychological history, and that her history is corroborated by the medical record, the fact that Dr. Arnet issued his report after the date last insured alone is not a legitimate basis for completely rejecting his opinion.

The Commissioner argues that the ALJ's finding was reasonable, since Dr. Arnet did not suggest that his opinions applied retroactively, and his opinion constitutes "a marked departure from earlier treatment records during the relevant period." (Doc. 20 at 6–7). While that may have been a legitimate factor for the ALJ to consider in weighing Dr. Arnet's opinion, the ALJ did not, in fact, use this factor. Therefore, the Court does not accept this reasoning, as the Commissioner's *post hoc* arguments cannot supplement the ALJ's decision. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007).

In addition, the Commissioner contends that Dr. Arnet's statement that Ms. Lucero was "permanently disabled" is not considered a medical opinion as defined by the Regulations, and therefore does not trigger the treating physician analysis. (Doc. 20 at 6). To be sure, medical assessments that "go beyond purely medical findings to reach 'issues reserved to the Commissioner' – such as the claimant's RFC . . . and the

---

[5] Although Ms. Lucero had previously been diagnosed with major depressive disorder by several medical sources, only Dr. Arnet diagnosed Ms. Lucero with bipolar disorder, which the ALJ determined was one of Ms. Lucero's severe impairments. (*See* AR 331, 349, 352).

ultimate question of disability – 'are not medical opinions.'" *Lakey v. Barnhart* , No. 04-7041, 127 Fed. Appx. 455, 457 (10th Cir. Apr. 5, 2005) (unpublished) (citing 20 C.F.R. § 404.1527(e)). Indeed, "the agency will not give any special significance to the source of an opinion on issues reserved to the Commissioner." *Id.* (internal citations omitted).

Nevertheless, the ALJ must evaluate all evidence in the record that is relevant to the question of disability, "including opinions from medical sources about issues reserved to the Commissioner." *Id.* (citing Social Security Ruling ("SSR") 96-5P, 1996 WL 374183, at *3). Thus, although Dr. Arnet's report includes a statement on an issue reserved to the Commissioner—that Ms. Lucero is disabled due to her symptoms—and this particular conclusion could not be afforded controlling weight, his findings remain probative evidence that must be evaluated. *Lakey*, 127 Fed. Appx. at 457.

Moreover, similar to above, while this is relevant to the analysis of Dr. Arnet's opinion, the ALJ did not provide this explanation in her decision. As a result, the Court again does not accept this reasoning. *See Haga*, 482 F.3d at 1208. Therefore, Court concludes that, upon remand, the ALJ should clarify her reasoning as to the weight afforded to Dr. Arnet's opinion using the delineated two-step analysis.

## V.   Recommendation

For the reasons discussed above, the Court concludes that the ALJ failed to properly weigh the medical opinions in the record. On remand, the ALJ should properly weigh the medical opinions, including those discussed in this Order. The Court does not decide any other issue raised by Ms. Lucero, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE RECOMMENDED** that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 16), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

---

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE