## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JUDITH MELANIE LUCERO,

        Plaintiff,

v.                                    No. CV 14-712 WJ/CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on United States Magistrate Judge Carmen E. Garza's *Proposed Findings and Recommended Disposition* ("PFRD"), (Doc. 26), filed October 22, 2015. The PFRD recommended that Plaintiff's *Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc. 16), be granted and that this case be remanded for further proceedings.

The parties were notified that written objections to the PFRD were due within 14 days, and that failure to object would not allow for appellate review. (Doc. 26 at 20). Defendant timely filed *Defendant's Objections to the Magistrate Judge's Report and Recommendation* ("Objections"), (Doc. 27), on October 29, 2015; Ms. Lucero filed *Plaintiff's Response to Defendant's Objections to the Magistrate Judge's Report and Recommendations* ("Response"), (Doc. 28), on November 11, 2015. After a *de novo* review of the record and the PFRD, the Court adopts Judge Garza's PFRD in its entirety.

## I.     Background

On February 18, 2010, Judith Melanie Lucero filed an application for disability insurance benefits, alleging disability beginning February 1, 2009. Ms. Lucero's claim was initially denied, and again upon reconsideration. A request for a hearing was filed, and a hearing was held before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision.  Ms. Lucero then filed an application for review by the Appeals Council, which was summarily denied.

Thereafter, Ms. Lucero appealed the ALJ's decision to this Court, arguing that the ALJ committed reversible, legal error by: (1) omitting Ms. Lucero's psychological limitations from the residual functional capacity finding ("RFC") by improperly rejecting medical opinions in the record; (2) failing to make findings regarding the physical or mental demands of Ms. Lucero's past relevant work; and (3) inappropriately relying on VE testimony which was based on the ALJ's improper RFC finding. (Doc. 16 at 1–2). This Court referred this case to United States Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition. (Doc. 7). Judge Garza found that the ALJ failed to properly weigh the medical opinions in the record, and, accordingly, recommended that this case be remanded to the Commissioner of the Social Security Administration (the "Commissioner") for further proceedings. (Doc. 26).

## II.     Objections

### A.  _Law Relating to Objections_

After a magistrate judge files her recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. FED. R. CIV. P. 72(b)(2). An objection must be both timely and "sufficiently specific to focus

the district court's attention on the factual and legal issues that are truly in dispute." *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996). In addition, "[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived." *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (internal citations omitted).

When resolving objections to a magistrate judge's recommendation, the district judge must make a de novo determination regarding any part of the recommendation to which a party has properly objected. 28 U.S.C. § 636(b)(1)(C). In doing so, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. FED. R. CIV. P. 72(b)(3).

### B.  The Commissioner's Objections to the PFRD

In the PFRD, Judge Garza found that, while the ALJ stated in her decision that she considered all opinion evidence in accordance with the requirements of 20 CFR § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p, she did not adequately explain the weight she afforded several medical opinions in the record. Specifically, the ALJ did not properly weigh the findings of Neil Arnet, M.D., Cathy Simutis, Ph.D., and Renata Wewerka, Ph.D., and therefore committed legal error. Accordingly, Judge Garza recommended that the case be remanded to the Commissioner for further proceedings.

The Commissioner objects, and argues that this Court should not adopt Judge Garza's PFRD. The Commissioner states that Judge Garza misapplied Social Security Regulations and Tenth Circuit case law in evaluating the ALJ's analysis of the medical

opinions in the record. In doing so, the Commissioner argues, Judge Garza went beyond her role in reviewing the ALJ's decision.

In response, Ms. Lucero states that the Commissioner misstates Tenth Circuit case law, and otherwise misinterprets Judge Garza's findings. Ms. Lucero maintains that the ALJ did not adequately explain the weight she afforded the medical opinions in the record, and that this Court should adopt Judge Garza's PFRD and its recommendation to remand the case for further proceedings.

### 1. The Findings of Dr. Arnet

With regard to the findings of Dr. Arnet, Judge Garza found that the ALJ did not engage in the required two-step inquiry in analyzing Dr. Arnet's treating medical opinion. Judge Garza further found that the ALJ improperly afforded Dr. Arnet's opinion little weight for the sole reason that the "opinion falls outside of the pertinent period of the date last insured . . . ." (Administrative Record "AR" 17).

In her Objections, the Commissioner first argues that Dr. Arnet's opinion was on an issue reserved to the Commissioner, and therefore was not entitled to controlling weight or special significance normally afforded treating physician opinions. Second, the Commissioner maintains that the Tenth Circuit does not require an ALJ to explicitly address whether she gave controlling weight to a treating source opinion.

Ms. Lucero responds that the ALJ did not reason in her decision that Dr. Arnet's opinion was on an issue reserved to the Commissioner, and therefore that argument should not be considered by this Court. Ms. Lucero further argues that the ALJ did not otherwise properly analyze why Dr. Arnet's opinion should not be afforded controlling weight, or provide good reasons for the weight it was given.

As stated in the PFRD, generally, the ALJ will give more weight to the medical opinions of a claimant's treating physicians. *See* 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In deciding how much weight to give a treating source opinion, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011).

First, the ALJ must initially determine whether a treating physician's opinion is to be accorded "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

Second, if the opinion is not accorded controlling weight, "the ALJ must make clear how much weight the opinion is being given . . . and give good reasons . . . for the weight assigned." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300-01). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330-31 (citing *Langley*, 373 F.3d at 1120). Indeed, "even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [the Regulations]." *Langley*, 373 F.3d at 1119 (internal citations and quotations omitted.

The ALJ in this case did not engage in the required two-step inquiry in analyzing Dr. Arnet's treating opinion. As an initial matter, the ALJ did not discuss whether she

would afford Dr. Arnet's opinion controlling weight. The Commissioner's arguments to the contrary are unavailing.

The Commissioner first reiterates her argument that Dr. Arnet's statement that Ms. Lucero was "permanently disabled" is not considered a medical opinion as defined by the Regulations, and therefore does not trigger the treating physician analysis. (Doc. 27 at 2). However, as Judge Garza stated in the PFRD, the ALJ did not provide this explanation in her decision, and it is well-settled that the Commissioner's *post hoc* arguments cannot supplement the ALJ's decision. *See Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007). The Commissioner does not provide this Court with any authority to rule otherwise.

The Commissioner further argues that, under *Mays v. Colvin*, the Tenth Circuit does not require the ALJ to explicitly address whether a treating source opinion is entitled to controlling weight where the ALJ rejects the opinion at the second step of the analysis. 739 F.3d 569, 575 (10th Cir. 2014). This argument is not persuasive, as this case is distinguishable from *Mays*.

First, the Tenth Circuit in *Mays* did not find error where, even though the ALJ did not expressly state whether he had given a treating physician's opinion controlling weight, the Court could infer from the decision that the ALJ had done so. *Id.* In that case, the ALJ cited to two separate medical tests, and treatment notes from other consultative examiners, to conclude that the treating physician's opinion was not consistent with the objective medical evidence. *Id.* at 574–575. Here, the ALJ simply did not engage in any analysis of whether Dr. Arnet's opinion was entitled to controlling weight, or include any discussion of whether his opinion was well-supported by

medically acceptable clinical and laboratory diagnostic techniques, or consistent with other substantial evidence in the record.

This case is further distinguishable from *Mays* because, here, the ALJ also failed to adequately explain the weight she ultimately afforded Dr. Arnet's opinion at the second step of the required analysis. *See id.* at 576 (holding that the ALJ did not err in failing to weigh the treating physician's opinion in accordance with the relevant factors where the ALJ listed those factors and the record showed that the ALJ considered them). Indeed, regardless of whether Dr. Arnet's opinion was entitled to controlling weight, the ALJ was required to "make clear how much weight the opinion is being given . . . and give good reasons . . . for the weight assigned." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300–01). The ALJ must evaluate all evidence in the record that is relevant to the question of disability, "including opinions from medical sources about issues reserved to the Commissioner." *Lakey v. Barnhart* , No. 04-7041, 127 Fed. Appx. 455, 457 (10th Cir. Apr. 5, 2005) (unpublished) (citing Social Security Ruling ("SSR") 96-5P, 1996 WL 374183, at *3).

As explained by Judge Garza, the only reason the ALJ provided for affording Dr. Arnet's opinion "little weight," was because his "opinion falls outside of the pertinent period of the date last insured . . . ." (AR 17). It is entirely proper for the ALJ to consider medical opinions rendered outside the pertinent period of disability when those opinions address conditions and symptoms that manifested before the claimant was no longer insured. *See Grogan v. Barnhart*, 399 F.3d 1257, 1263–64 (10th Cir. 2005); *Culler v. Massanari*, No. 00-3163, 9 Fed. Appx. 839, 843–44 (10th Cir. May 22, 2001) (unpublished). Here, Judge Garza noted that, although Dr. Arnet's first report is dated

April 2, 2012, Ms. Lucero initially presented to Dr. Arnet on September 16, 2010, two and a half months after the date last insured. (AR 371). Dr. Arnet refers to this initial meeting, and her treatment during the few months immediately following, in describing her impairments and limitations. (AR 372–74). Judge Garza found that, given the proximity of Dr. Arnet's opinion to the date last insured, Dr. Arnet's reliance on Ms. Lucero's previous psychological history, and that Ms. Lucero's history is corroborated by the medical record, the fact that Dr. Arnet issued his report after the date last insured alone is not a legitimate basis for affording his opinion little weight. This Court agrees. The Commissioner does not object to this finding and, as a result, this Court finds that the ALJ erred in her analysis of Dr. Arnet's opinion for the same reasons stated in the PFRD.

>  2. *The Findings of Dr. Simutis*

As to the findings of Dr. Simutis, Judge Garza found that, while the ALJ stated she placed great weight on portions of Dr. Simutis' opinions, those limitations were not reflected in the RFC finding. As a result, Judge Garza concluded that the ALJ seemed to have implicitly rejected those findings, and therefore inappropriately used portions of evidence favorable to her position while ignoring or rejecting other evidence.

The Commissioner argues that the ALJ explicitly gave great weight to the relevant portions of Dr. Simutis' opinions, and stated that those limitations were reflective of the RFC finding. The Commissioner maintains that the ALJ was not required to place the "moderate limitations" in the RFC, but that it was the ALJ's duty to translate the "moderate limitations" into a specific RFC finding.

Ms. Lucero responds, and states that, although the ALJ was not required to

include verbatim Dr. Simutis' limitations in the RFC finding, the limitations must be reflected in the RFC. Ms. Lucero argues that moderate limitations in Dr. Simutis' report were not included in the RFC, and therefore the ALJ must have rejected those opinions.

As Judge Garza explained, it is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (internal citations omitted). It is inappropriate for an ALJ to "'us[e] portions of evidence favorable to [her] position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004)). An ALJ is considered to have rejected evidence of functional limitations when those limitations are not reflected in her RFC finding. *Haga v. Astrue,* 482 F.3d 1205, 1207–08 (10th Cir. 2007) (remanding case where ALJ's RFC determination reflected some restrictions identified by physician's opinion, but did not include others).

The Commissioner states that the ALJ properly weighed all of Dr. Simutis' assessment because in her decision she states that she placed great weight on the narrative portions of Dr. Simutis' report. For this reason, the Commissioner states that this case is also distinguishable from *Haga*, cited above. In addition, the Commissioner states that the ALJ clearly fully incorporated all limitations in the narrative portions of the report because the ALJ stated that those limitations were "reflective" of the RFC finding.

The Court finds this reasoning to be problematic. Essentially, the Commissioner is saying that, because the ALJ stated that she gave weight to Dr. Simutis' report which included moderate limitations, the ALJ could not have rejected those limitations.

Similarly, the Commissioner suggests that, when an ALJ states that a medical opinion is reflective of the RFC finding, the ALJ must have included the limitations in the opinion in the RFC. However, to allow the ALJ to simply state that she has placed great weight on a medical opinion, and to assert that she incorporated any limitations in to the RFC finding, without actually reflecting those limitations in the RFC, the Court would eviscerate the distinction between incorporating a moderate limitation and rejecting a moderate limitation without discussion. In doing so, the Court would prevent itself from performing any meaningful review of the ALJ's analysis of the record. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that in the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence.").

That being said, here, Dr. Simutis opined in the narrative section of her report that Ms. Lucero was moderately limited in her abilities to concentrate and persist in a task and interact with coworkers and the public. The ALJ stated that she placed "great weight" on Dr. Simutis' narrative portions of her report. The ALJ then ultimately found that Ms. Lucero could perform light work as defined in 20 C.F.R. § 404.1567(a), but that, due to pain and depression, she was unable to work at jobs requiring a production pace, such as assembly jobs. (AR 14). The Court finds that the RFC finding is not reflective of the moderate limitations stated above. While this Court agrees with the Commissioner that the RFC finding does not necessarily have to include these moderate limitations

verbatim, a moderate impairment supports the conclusion that an individual's capacity to perform work is impaired, and the RFC must reflect those functional impairments. *See* Program Operations Manual Systems ("POMS"), DI 24510.063(2), *available at* https://secure.ssa.gov/apps10/poms.NSF/lnx/0424510063. Otherwise, it follows that the ALJ implicitly rejected those limitations without explanation. As a result, this Court agrees with Judge Garza that this case should be remanded to the Commissioner for the ALJ to clarify her findings. *Trujillo v. Colvin*, CV 14-789 SMV, at *9 (D.N.M. filed July 24, 2015) (unpublished) (holding that the ALJ was to either adopt a physician's opinion such that the findings were reflected in the RFC, or reject the opinion and explain her reasons for doing so).

### 3. The Findings of Dr. Wewerka

Finally, as to the opinion of Dr. Wewerka, Judge Garza found that Dr. Wewerka's findings in Section III of her Mental Residual Functional Capacity Assessment ("MRFCA") of Ms. Lucero's impairments did not adequately explain the limitations she stated in Section I of the MRFCA. Thus, under *Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015) (unpublished), Judge Garza concluded that the ALJ's reliance on Dr. Wewerka's opinion in Section III is not supported by substantial evidence. In the alternative, even assuming Dr. Wewerka's Section III assessments could properly be considered substantial evidence, the limitations stated in that opinion were not reflected in the RFC.

The Commissioner objects that the Magistrate Judge improperly took the unpublished holding of *Carver* as an invitation to second-guess Dr. Wewerka's assessments. The Commissioner urges that *Carver* is unpublished, and therefore not

controlling, and that the Court should not second-guess the psychologist's assessment in Section III of the MRFCA.

Ms. Lucero argues that *Carver* has been adopted by several district judges in the Tenth Circuit, and that the Commissioner actually cites *Carter* with approval in her Objections. Moreover, Ms. Lucero contends, *Carver*'s reasoning is derived directly from the Commissioner's POMS, and the Commissioner is bound to follow her own policies. Ms. Lucero notes that the Commissioner did not object to Judge Garza's alternative finding that, even assuming Dr. Wewerka's assessments could support the ALJ's RFC finding, the RFC finding does not actually reflect the limitations in the assessment.

The Commissioner alleges that Judge Garza erred in "second-guessing" Dr. Wewerka's assessment, and contends that Dr. Wewerka's Section III assessment adequately encapsulated the specific moderate limitations identified in Section I. However, as Judge Garza pointed out, even though Dr. Wewerka noted that Ms. Lucero was moderately limited in her ability to understand, remember, and carry out detailed instructions in Section I of her MRFCA, (AR 342), in Section III she opined that Ms. Lucero can, in fact, understand, remember, and carry out detailed, but not complex, instructions.  (AR 344). In *Carver*, the Tenth Circuit observed that if a consultant's "Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding." 600 Fed. Appx. at 619 (citing *Gorringe v. Astrue,* 898 F. Supp. 2d 1220, 1224–25 (D. Colo. 2012), and *Baysinger v. Astrue,* No. 11–cv–00333–WYD, 2012 WL 1044746, at *5–6 (D. Colo. Mar. 28, 2012) (unpublished)).

Under the guidance of *Carver*, Judge Garza found that Dr. Wewerka's Section III findings did not adequately explain the moderate limitations she stated in Section I. The Commissioner does not explain this discrepancy. This Court agrees that Dr. Wewerka's Section III assessment fails to adequately encapsulate such a limitation, and that it seems to be completely inconsistent.

The Commissioner then argues that *Carver* is "only an unpublished opinion and is not controlling." (Doc. 27 at 4). While the Commissioner is correct that *Carver* is not binding on this Court, the reasoning in *Carver* is based on the Commissioner's POMS, which this Court finds persuasive, and the Commissioner has not presented any other authority to convince this Court otherwise.[1] Indeed, the Commissioner has provided one other unpublished Tenth Circuit case which holds that Section I findings are not to be considered in addition to the findings in Section III. The Commissioner also provides several cases from other circuits which involve an ALJ's assessment of a claimant's functional limitations in the RFC. As explained above, that is not Judge Garza's recommendation, and is not at issue here.

Moreover, as Ms. Lucero points out, the Commissioner did not object to Judge Garza's alternative finding that, even assuming Dr. Wewerka's assessments could support the ALJ's RFC finding, the RFC finding does not actually reflect the limitations in the assessment. Indeed, while Dr. Wewerka opined that Ms. Lucero can only understand, remember, and carry out detailed, but not complex, instructions, and make decisions, attend, and concentrate for only two hours at a time, (AR 344), the only non-exertional limitation in the RFC limits Ms. Lucero to working jobs that do not require a

---

[1] *Carver* has been cited with approval by other judges in this district. *See Trujillo*, CV No. 14-879, at *8–9. In addition, the Commissioner cites to *Carver* in support of her position elsewhere in her objections. (Doc. 27 at 7).

production pace, such as assembly work. (AR 14). As stated in the PFRD, the ALJ did

not discuss or explain why she did not include these limitations in her RFC

determination. This, again, is error. *Baysinger*, 2012 WL 1044746, at *6. "The ALJ may

not pick and choose which aspects of an uncontradicted medical opinion to believe,

relying on only those parts favorable to a finding of nondisability." *Hamlin*, 365 F.3d at

1219 (internal citations omitted).

      Therefore, this Court agrees with Judge Garza that it is unable to meaningfully

review the ALJ's findings, which requires remand. *See Clifton*, 79 F.3d at 1009 (holding

that in the absence of findings supported by specific weighing of the evidence in the

record, the ALJ leaves the Court unable to assess whether relevant evidence

adequately supports her conclusion); *Threet*, 353 F.3d at 1190 ("Without the benefit of

the ALJ's findings supported by the weighing of this relevant evidence, we cannot

determine whether his conclusion . . . is itself supported by substantial evidence.").

**III.   Conclusion**

      For the reasons stated above, the Court will **ADOPT** the Magistrate Judge's

recommendations in the PFRD. **IT IS THEREFORE ORDERED** that Ms. Lucero's

*Motion to Reverse and Remand for a Rehearing with Supportive Memorandum*, (Doc.

16), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further

proceedings.

_____

UNITED STATES DISTRICT JUDGE