IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JUDITH MELANIE LUCERO,

       Plaintiff,

v.                                                              No. CV 14-712 WJ/CG

CAROLYN W. COLVIN,
Acting Commissioner of Social Security
Administration,

       Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**THIS MATTER** comes before the Court on Plaintiff Judith Lucero's *Motion for Attorney Fees Pursuant to the Equal Access to Justice Act, With Memorandum in Support*, ("Motion"), (Doc. 30), filed January 18, 2016; Defendant's *Response to Plaintiff's Motion for Attorney Fees*, ("Response"), (Doc. 31), filed January 29, 2016; and *Plaintiff's Reply in Support of Her Motion For Attorney Fees Pursuant to the Equal Access to Justice Act, With Memorandum in Support*, ("Reply"), (Doc. 34), filed February 10, 2016. United States District Judge William P. Johnson referred this case to Magistrate Judge Carmen E. Garza to perform legal analysis and recommend an ultimate disposition of the case. (Doc. 7). Having reviewed the Motion, the Response, the Reply, and relevant law, the Court **RECOMMENDS** that Plaintiff's Motion be **GRANTED**.

    **I.**    **Background**

On February 18, 2010, Judith Melanie Lucero filed an application for disability insurance benefits, alleging disability commencing on February 1, 2009. Her claim for

benefits was initially denied, and again upon reconsideration. A request for a hearing was filed, and a hearing was held before an Administrative Law Judge ("ALJ"), who issued an unfavorable decision. Ms. Romero then filed an application for review by the Appeals Council, which was also summarily denied.

Thereafter, Ms. Lucero appealed to this Court, arguing that the Commissioner committed reversible, legal error by: (1) omitting Ms. Lucero's psychological limitations from the residual functional capacity finding ("RFC") by improperly rejecting medical opinions in the record; (2) failing to make findings regarding the physical or mental demands of Ms. Lucero's past relevant work; and (3) inappropriately relying on VE testimony which was based on the ALJ's improper RFC finding. (Doc. 16 at 1–2). Because the ALJ did not properly weigh medical opinions in the record, this Court recommended that the case be remanded to the Commissioner of the Social Security Administration (the "Commissioner") for further proceedings in its *Proposed Findings and Recommended Disposition* ("PFRD"). (Doc. 26). United States District Judge William P. Johnson then adopted this Court's recommendations in his *Memorandum Opinion and Order* ("Order"). (Doc. 29).

Ms. Lucero now moves this Court for attorney's fees pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) ("EAJA"). She argues that an award of fees is appropriate because she is the prevailing party, her net worth is less than $2,000,000.00, and the Commissioner's position in defending the action was not substantially justified. (Doc. 30 at 1).

The Commissioner responds that Ms. Lucero's request for fees under EAJA should be denied, because the Commissioner's position in this case was substantially

justified. (Doc. 31 at 1). The Commissioner contends that it was reasonable for the Commissioner to defend the ALJ's decision, as it was "at least arguable" that the ALJ properly considered the medical opinions in the record. (Doc. 31 at 1–6). In Ms. Lucero's Reply, she asserts that it was not reasonable for the Commissioner to defend the ALJ's decision, as the ALJ clearly failed to analyze medical opinions in accordance with the law. (Doc. 34 at 2–7).

**II.   Analysis**

   *A.  Standard of Review*

Pursuant to EAJA, a court is required to award attorney's fees if: "(1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007) (citing 28 U.S.C. § 2412(d)(1)(A)). Here, the Commissioner only disputes whether her position was substantially justified.

"The test for substantial justification in this circuit is one of reasonableness in law and fact." *Hackett*, 475 F.3d at 1172 (citing *Gilbert v. Shalala*, 45 F.3d 1391, 1394 (10th Cir. 1995)). In order to be substantially justified, the government's position must be "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." *Hadden v. Bowen*, 851 F.2d 1266, 1267 (10th Cir. 1988) (citing *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). "The term position includes the government's position both in the underlying agency action and during any subsequent litigation." *Hadden*, 851 F.2d at 1267 (internal citations omitted).

"When an area of law is 'unclear or in flux, it is more likely that the government's position will be substantially justified.'" *Cherry v. Barnhart*, No. 04-5059, 125 Fed. Appx.

913, 916 (10th Cir. Jan. 24, 2005) (unpublished) (citing *Martinez v. Sec'y of Health and Hum. Servs.*, 815 F.2d 1381, 1382 (10th Cir. 1987)). Indeed, "the government's position can be justified even though it is not correct." *Hackett*, 475 F.3d at 1172 (citing *Pierce*, 487 U.S. at 566 n.2). "The government bears the burden of showing that its position was substantially justified." *Gilbert*, 45 F.3d at 1394 (internal citations omitted).

    B. *The Commissioner's Position Was Not Substantially Justified*

In this case, the Court remanded the ALJ's decision because the ALJ failed to properly weigh the opinions of Neil Arnet, M.D., Cathy L. Simutis, Ph.D., and Renate Wewerka, Ph.D. (Doc. 29 at 14). Thus, the issue here is whether the Commissioner has met her burden to show that she was substantially justified in failing to properly weigh medical opinions in the record, and defending that error in the subsequent litigation. *Hartter v. Apfel*, No. 99-3095, 202 F.3d 282, *2 (10th Cir. Jan. 11, 2000) (unpublished). This Court finds that the Commissioner has not, and will address the arguments as to each opinion in turn.

First, the ALJ considered the opinion of Dr. Arnet, Ms. Lucero's treating psychiatrist.[1] Ms. Lucero first presented to Dr. Arnet on September 16, 2010 for treatment of depression and anxiety. (AR 371). Dr. Arnet provided a Psychiatric Report on Ms. Lucero dated April 2, 2012, in which he describes Ms. Lucero's treatment from September 16, 2010 through April 2, 2012. (AR 371–74). In the report, Dr. Arnet describes Ms. Lucero's history of and treatment for physical and mental impairments, her initial mental status examination, and treatment course. (*Id.*). After treatment, Dr. Arnet diagnosed Ms. Lucero with Bipolar II Disorder and Panic Disorder without

---

[1] The parties did not dispute that Dr. Arnet is Ms. Lucero's treating psychiatrist. (*See* Doc. 20 at 5–6).

4

Agoraphobia, and gave her a current GAF score of 45, and 50 for the past year.[2] (AR 374). Dr. Arnet opined that Ms. Lucero was permanently disabled due to her mental and physical impairments. (*Id.*). The ALJ afforded Dr. Arnet's assessment "little weight," as the "opinion falls outside of the pertinent period of the date last insured . . . ." (AR 17).

Because Dr. Arnet is Ms. Lucero's treating psychiatrist, "the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ must initially determine whether a treating physician's opinion is to be accorded "controlling weight." *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). "Such an opinion must be given controlling weight if it is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300). "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.*

Next, if the opinion is not accorded controlling weight, "the ALJ must make clear how much weight the opinion is being given. . .and give good reasons. . .for the weight assigned." *Kauser*, 638 F.3d at 1330 (citing *Watkins*, 350 F.3d at 1300–01). "Thus, a deficiency as to the conditions for controlling weight *raises the question* of how much weight to give the opinion, it does not resolve the latter, distinct inquiry." *Id.* at 1330–31 (citing *Langley*, 373 F.3d at 1120). Indeed, "even if a treating physician's opinion is not entitled to controlling weight, treating source medical opinions are still entitled to

---

[2] A GAF score between "41–50[,] indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job." *Langley,* 373 F.3d at 1122 n.3 (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM–IV–TR] at 34)).

deference and must be weighed using all of the factors provided in [the Regulations]." *Langley*, 373 F.3d at 1119 (internal citations and quotations omitted).

Here, as stated in the PFRD and Order, the ALJ simply did not engage in any analysis of whether Dr. Arnet's opinion was entitled to controlling weight, or include any discussion of whether his opinion was well-supported by medically acceptable clinical and laboratory diagnostic techniques, or consider whether it was consistent with other substantial evidence in the record. The Commissioner argued, and continues to argue, that her defense of the ALJ's analysis was reasonable, as Dr. Arnet's report included an opinion on an issue reserved to the Commissioner, namely that Ms. Lucero was permanently disabled.  However, the ALJ did not provide this explanation, and the Commissioner's *post hoc* arguments cannot supplement the ALJ's decision. As stated in the Order, it is well-settled that it is impermissible for the Court to engage in post-hoc rationalization, and that the Court must evaluate an ALJ's finding based solely on the reasons stated in the decision. *Robinson*, 366 F.3d 1078, 1084–85 (10th Cir. 2004).

In any event, the ALJ also failed to adequately explain the weight she ultimately afforded Dr. Arnet's opinion at the second step of the required analysis. Indeed, the only reason the ALJ provided for affording Dr. Arnet's opinion "little weight," was because his "opinion falls outside of the pertinent period of the date last insured . . . ." (AR 17). As explained in the PFRD and Order, it is entirely proper for the ALJ to consider medical opinions rendered outside the pertinent period of disability when those opinions address conditions and symptoms that manifested before the claimant was no longer insured.[3]

---

[3] In this case, although Dr. Arnet's first report is dated April 2, 2012, Ms. Lucero initially presented to Dr. Arnet on September 16, 2010, two and a half months after the date last insured. (AR 371). Dr. Arnet refers to this initial meeting, and her treatment during the few months immediately following, in describing her impairments and limitations. (AR 372–74). Judge Garza found that, given the proximity of Dr. Arnet's

6

*See Grogan v. Barnhart*, 399 F.3d 1257, 1263–64 (10th Cir. 2005); *Culler v. Massanari*, No. 00-3163, 9 Fed. Appx. 839, 843–44 (10th Cir. May 22, 2001) (unpublished).

In sum, the ALJ's analysis of Dr. Arnet's opinion was improper, as she failed to engage in the two-step inquiry in accordance with the law. The Commissioner has not shown how the defense of that error was substantially justified.

Second, Dr. Simutis performed a psychological consultative examination of Ms. Lucero on August 17, 2010. (AR 330–31). In the report, Dr. Simutis diagnosed Ms. Lucero with major depressive disorder and chronic pain due to a medical condition. (AR 331). She opined that Ms. Lucero's prognosis is poor, and that Ms. Lucero is mildly limited in her ability to understand and remember instructions; moderately limited in her ability to concentrate and persist in a task; moderately limited in her ability to interact with coworkers and the public; and mildly limited in her ability to adapt to change. (*Id.*). The ALJ stated that she placed great weight on the narrative portions of Dr. Simutis' report that are consistent with the RFC finding. (AR 18).

As stated in the PFRD, it is well-settled that "[t]he ALJ may not pick and choose which aspects of an uncontradicted medical opinion to believe, relying on only those parts favorable to a finding of nondisability." *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004) (internal citations omitted). Although the ALJ placed "great weight" on Dr. Simutis' narrative portions of her report, which included that Ms. Lucero was moderately limited in her abilities to concentrate and persist in a task and interact with coworkers and the public, these limitations are not reflected in the ALJ's RFC finding. The ALJ seems to have implicitly rejected those findings, and therefore inappropriately

---

opinion to the date last insured, Dr. Arnet's reliance on Ms. Lucero's previous psychological history, and that Ms. Lucero's history is corroborated by the medical record, the fact that Dr. Arnet issued his report after the date last insured alone is not a legitimate basis for affording his opinion little weight.

7

"'us[ed] portions of evidence favorable to [her] position while ignoring other evidence.'" *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (citing *Hardman v. Barnhart,* 362 F.3d 676, 681 (10th Cir. 2004)). This selective application of Dr. Simutis' report without explanation was error, and required a remand in order for the ALJ to explain the evidentiary basis for her RFC determination. *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007).

The Commissioner argues that the ALJ stated in her decision that the limitations in Dr. Simutis' report were "reflective" of the RFC, or that it was at least arguable that the RFC accounted for the limitations. (Doc. 31 at 3). Again, as explained in the Order, by allowing the ALJ to simply state that she has placed great weight on a medical opinion, and to assert that she incorporated any limitations in to the RFC finding, without actually reflecting those limitations in the RFC, the Court would eviscerate the distinction between incorporating a moderate limitation and rejecting a moderate limitation without discussion. In doing so, the Court would prevent itself from performing any meaningful review of the ALJ's analysis of the record. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (holding that in the absence of findings supported by specific weighing of the evidence in the record, the ALJ leaves the Court unable to assess whether relevant evidence adequately supports her conclusion); *Threet v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) ("Without the benefit of the ALJ's findings supported by the weighing of this relevant evidence, we cannot determine whether his conclusion . . . is itself supported by substantial evidence.").

The law of this Circuit is clear that where an ALJ's analysis of medical opinions precludes the court from conducing any meaningful review of that analysis, the ALJ has

committed legal error and the case must be remanded to the Commissioner for further proceedings. *Kauser*, 638 F.3d at 1331. Likewise, the Commissioner is not substantially justified in defending such an error. *Groberg v. Astrue*, No. 11-4173, 505 Fed. Appx. 763, 768–69 (10th Cir. Dec. 14, 2012) (unpublished) (upholding district court's finding that Commissioner's position in favor of the ALJ's decision was not substantially justified when ALJ rejected medical opinions for unsupportable reasons). Here, the Commissioner has not offered any reasonable explanation for the ALJ's failure to incorporate limitations from Dr. Simutis' opinion in the RFC, or otherwise weigh those opinions, and therefore has not shown that her position was substantially justified. *Chester v. Apfel*, No. 00-7021, 1 Fed. Appx. 792, 794–95 (10th Cir. Jan. 4, 2001) (unpublished) (finding that the Commissioner's position was not substantially justified where there was no reasonable legal basis for the ALJ's glaring legal error).

Finally, Dr. Wewerka, a State non-examining psychological consultant, performed a Psychiatric Review Technique and Mental Residual Functional Capacity Assessment ("MRFCA") of Ms. Lucero's impairments. Similar to Dr. Simutis, Dr. Wewerka diagnosed Ms. Lucero with major depressive disorder and chronic pain due to a medical condition. (AR 349, 352).

In Section I of her MRFCA, Dr. Wewerka found that Ms. Lucero was moderately limited in her ability to: (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or proximity to others without being distracted by them; and (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number

and length of rest periods. (AR 342–43). In Section III of her MRFCA, Dr. Wewerka concluded that Ms. Lucero "can understand, remember, and carry out detailed, but not complex instructions, make decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in a work setting." (AR 344). The ALJ stated that she would give Dr. Wewerka's opinion significant weight, because Dr. Wewerka concluded that "there are moderate limitations in concentration, persistence and pace in keeping with [her] evaluation." (AR 18).

In the PFRD and Order, the Court based its holding that Dr. Wewerka's Section III findings could not support the ALJ's RFC finding on a recent, unpublished Tenth Circuit decision. *See Carver v. Colvin*, No. 14-5056, 600 Fed. Appx. 616 (10th Cir. Jan. 20, 2015) (unpublished). The Commissioner argues that, because *Carver* is an unpublished decision and the Commissioner disputes the *Carver* Court's interpretation and reliance on agency instructional materials, her position in defending the ALJ's decision was substantially justified. Since this is an area of law which is 'unclear or in flux," the Court finds that the Commissioner's position as to this particular issue may have been substantially justified. *Cherry*, 125 Fed. Appx. at 916. (citing *Martinez*, 815 F.2d at 1382).

However, the Court also held that, even assuming Dr. Wewerka's assessments could support the ALJ's RFC finding, the RFC finding does not actually reflect the limitations in Dr. Wewerka's Section III assessment. (Doc. 26 at 14–15; Doc. 29 at 13–14). Indeed, while Dr. Wewerka opined that Ms. Lucero can only understand, remember, and carry out detailed, but not complex, instructions, and make decisions,

attend, and concentrate for only two hours at a time, (AR 344), the only non-exertional limitation in the RFC limits Ms. Lucero to working jobs that do not require a production pace, such as assembly work. (AR 14). As stated in the PFRD and the Order, the ALJ did not discuss or explain why she did not include these limitations in her RFC determination. It is absolutely well-settled that this, again, is error. *Baysinger*, 2012 WL 1044746, at *6. Additionally, for the reasons the Court has already articulated, *see* discussion *supra* at pp. 7–9, the Commissioner has not shown how her defense of this error was substantially justified.

### III. Recommendation

For the reasons discussed above, the Court concludes that the Commissioner was not substantially justified in her position in the underlying agency action and the subsequent litigation. Accordingly, the Court finds that Ms. Lucero is entitled to an award of attorney's fees under EAJA.

**IT IS THEREFORE RECOMMENDED** that Plaintiff Judith Lucero's *Motion for Attorney Fees Pursuant to the Equal Access to Justice Act, With Memorandum in Support*, (Doc. 30), be **GRANTED** and that attorney fees be, and hereby are, awarded under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), payable to Plaintiff in the amount of $7,339.36. *See Astrue v. Ratliff*, 560 U.S. 586 (2010) (EAJA fees are paid to the plaintiff, not the plaintiff's attorney).

**IT IS FURTHER RECOMMENDED THAT**, if Plaintiff's counsel receives attorney fees under both EAJA and 42 U.S.C. § 406(b) of the Social Security Act, Plaintiff's counsel shall refund the smaller award to Plaintiff pursuant to *Weakley v. Bowen*, 803 F.2d 575, 580 (10th Cir. 1986).

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).  **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE